OPINION
Appellant the State of Ohio appeals a judgment of the Holmes County Common Pleas Court granting appellee Matthew Lang, IV's, motion to suppress evidence seized after a traffic stop:
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING THE MOTIONS TO SUPPRESS, AS THE OFFICER HAD A REASONABLE SUSPICION OF CRIMINAL ACTIVITY BASED UPON ARTICULABLE FACTS AT THE TIME OF THE STOP.
In the early morning hours of December 21, 1998, Deputy Rick Erickson of the Homes County Sheriff's Department was on routine patrol near the intersection of County Road 200 and State Route 241, an area commonly referred to as the "Ashery." The deputy noticed a light gray Corsica stopped at a public telephone booth near the intersection. The vehicle was occupied by five persons, including appellee. The deputy had prior contact with most of the occupants of the vehicle. The occupants of the Corsica told the deputy they were on their way to a party in Massillon. After a brief discussion, the Corsica left the Ashery on State Route 241, proceeding in the direction of Massillon. Several hours later, Deputy Erickson responded to an alarm at a service station in the town of Clark. Arriving at the scene, the deputy noticed that the front door had been forcibly entered. Deputy Erickson observed what appeared to be drops of blood on the glass of the front door, and a blood trail leading from the door to the cash register. The deputy secured the scene and turned it over to detectives. Returning to patrol, Deputy Erickson traveled up State Route 83 toward Millersburg. As he approached the intersection of U.S. Route 62 and State Route 83, the deputy saw the same Corsica previously encountered at the Ashery. Becoming suspicious that a car that was headed toward Massillon was still in Holmes County several hours later, the deputy began following the Corisca toward Millersburg. As he pulled in behind the Corisca, the deputy noticed what he characterized as "somewhat of a loud exhaust." As he continued to follow the car, the deputy decided that he wanted to stop the vehicle. He observed the right rear wheel of the Corisca go over the fog line for a second or two. At the Shell station in Millersburg, the deputy stopped the Corisca. The driver of the vehicle, appellee, had blood on his hand. Appellee was later charged with five counts of breaking and entering, and five counts of petty theft. Appellee moved to suppress evidence seized from the vehicle, alleging that the deputy did not have a reasonable, articulable suspicion of criminal activity to justify the stop of the vehicle. The State alleged three grounds upon which the deputy had the requisite reasonable, articulable suspicion to justify the warrantless stop of the Corisca: (1) loud muffler in violation of R.C. 4513.22, (2) suspicion that the occupants of the Corisca had committed the breaking and entering at the service station in Clark, and (3) failing to travel within marked lanes in violation of R.C. 4511.33. The court rejected all three justifications alleged by the State, and granted the motion to suppress. On appeal the State has abandoned the claims that violation of the muffler law and the lane violation justified the stop, and is arguing only that the officer had a reasonable, articulable suspicion that the occupants of the Corsica had committed the breaking and entering.
 I
The State first alleges that the court made two errors in its findings of fact. First, the State argues that the trial court erred in finding the nature of the prior contact between the officer and appellee was not brought to the court's attention. This claim is without merit. Deputy Erickson testified that he knew all but one of the occupants of the vehicle from prior contact, without elaborating further. Tr. 6. Upon later questioning, the deputy testified that he had contact with Michael Cornwell when he was a corrections officer at the Holmes County Jail. Tr. 31, 32. However, he testified that he had no idea why Cornwell was at the jail, other than the fact that he had been charged with a crime. Id. at 32. He also testified that he did not know what Cornwell had been arrested for, or whether he had been convicted of an offense. Tr. 32. The court did not err in finding that the nature of the prior contact was not provided to the court. The State also argues that the court erred in finding that according to the evidence, there was not a logical nexus between the breaking and entering and the occupants of the Corsica in time or place. The State argues that there are two roads leading north out of Clark: State Route 83, and County Road 150, which converge at the intersection of State Route 83 and U.S. 62, just south of Millersburg. The State concedes that this evidence was not admitted during the hearing; however, the State argues that the local trial judge, being familiar with the area, understood the lay of the roadways. In essence, the State argues the court erred in failing to take judicial notice of the geographical location of the roadways in question. However, the State did not request that the court take judicial notice, but appears to have assumed the court would draw on its own knowledge of the location of roadways in the area. When a trial court fails to take judicial notice of a factual matter because the party did not raise the issue, an appellate court will not consider the fact in reviewing the appealed judgment. City of Hubbard v. Luchansky (1995), 102 Ohio App.3d 410,413. This rule concerning judicial notice is consistent with the fundamental appellate principle that a reviewing court cannot decide an appeal based upon factual matters which were not before the trial court, as well as the principle that error not raised before the trial court will be deemed waived on appeal. Id. at 414. The trial court did not err in failing to take judicial notice of the location of the roadways. As there was no evidence presented concerning the proximity of the location of the vehicle to the Village of Clark, the court did not err in its finding concerning the lack of nexus in time or place. Appellant also argues that the court erred in granting the motion to suppress, as the deputy had a reasonable, articulable suspicion that the occupants of the Corsica were involved in the break-in. When determining whether or not an investigative traffic stop is supported by a reasonable, articulable suspicion of criminal activity, the stop must be viewed in light of the totality of circumstances surrounding the stop. State v. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus, cert. denied (1988),488 U.S. 910; State v. Freeman (1980), 64 Ohio St.2d 291, paragraph one of the syllabus, cert. denied (1981), 454 U.S. 822. At a suppression hearing, the evaluation of the evidence and credibility of witnesses are issues for the trier of fact. State v. Smith (1991), 61 Ohio St.3d 284, 288, cert. denied (1992),502 U.S. 110. At the time the deputy stopped the Corsica, the evidence before the court reflected that the only information he possessed which would connect the Corsica to the break-in was that the occupants of the vehicle, who several hours earlier claimed to be going to Massillon for a party, were still in Holmes County. When specifically asked if the location of the vehicle gave him any indication that the occupants might be involved, the deputy said, "Hard to tell. I mean, it's in the same general township." Tr. 26. The court did not err in concluding that the officer had a hunch that the Corsica may have been involved, which did not rise to the level of reasonable, articulable suspicion. It wasn't until after the traffic stop that the officer observed the blood on appellee's hand, forming a nexus to the blood observed in the service station in Clark. Further, the court makes specific findings that the deputy was aware he did not have an articulable suspicion to justify the stop of the car: As the trier of fact, with an opportunity to observe Deputy Erickson's testimony, it was obvious that the officer was not comfortable with the State of Ohio's questions on this subject. By his demeanor on the stand and as shown by his subsequent actions, Deputy Erickson knew that he needed something more in order to justify the warrantless stop of the Corsica. What Deputy Erickson had was a hunch, and a hunch that proved to be correct. But the Constitution requires something more than a hunch to justify the warrantless stop and seizure of a citizen's vehicle. See Delaware v. Prouse, supra. Out of respect for the constitutional rights of all citizens, a court must require police to respect constitutional standards for warrantless traffic stops.
Judgment entry, April 28, 1999, page 9-10.
As noted earlier, the determination of the credibility of the witnesses lies within the discretion of the trial court, who had the opportunity to view the demeanor of the witness. The assignment of error is overruled.
The judgment of the Holmes County Common Pleas Court is affirmed.
WISE, J. and EDWARDS, J. CONCUR.